UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED

JAN 2 8 2015

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

DARRELL WALTER HOLMES,

        Petitioner,

v.

                                      Criminal Case No. 4:09cr85
                                      Civil Case No. 4:13cv113

UNITED STATES OF AMERICA,

        Respondent.

## OPINION AND ORDER

This matter is before the Court on four motions filed by Petitioner Darrell Walter Holmes ("Petitioner"). First, Petitioner moves to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255. Petitioner's § 2255 motion alleges that his counsel was ineffective "during the pretrial, plea, trial, sentencing and direct appeal process," and that his "conviction and sentence are violative of the First, Second, Fourth, Fifth, Sixth, and Eighth Amendments to the Constitution." Pet'r's § 2255 Mot. at 4-5, ECF No. 96. Second, Petitioner requests an evidentiary hearing, so that Petitioner "can prove the allegations [in his § 2255 motion]." Id. at 20. Third, Petitioner requests the opportunity to conduct discovery. Id. Fourth, Petitioner requests that counsel be appointed to represent him in the evidentiary hearing. Id. at 22. For the

reasons discussed below, the Court **DENIES** all of Petitioner's motions.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

From 1999 to 2002, Petitioner was stationed at the Yokota Air Base in Japan, where he was on active duty with the United States Air Force.  While stationed in Japan, at certain times, Petitioner cared for his wife's daughter on the evenings that his wife attended night classes.  On two separate occasions, Petitioner forced his stepdaughter, who was between five and seven years old, to perform oral sex on him.  In 2007, Petitioner was charged with a criminal violation of the Uniform Code of Military Justice, but such charge was dismissed due to the statute of limitations.

In April 2008, a grand jury in the Eastern District of Virginia indicted Petitioner, charging him with two counts of aggravated sexual abuse of a minor, in violation of 18 U.S.C. § 2241(c) and 7.  In proceedings with respect to such charges, Mr. Walter Dalton of the Office of the Federal Public Defender represented Petitioner.  In addition, Mr. Larry Dash assisted Mr. Walton in filing various motions and representing Petitioner in various hearings.  After Mr. Dalton filed several pretrial motions on Petitioner's behalf, including a motion to dismiss for lack of jurisdiction, the Government moved to dismiss the charges against Petitioner in May 2008.

2

In November 2008, after Petitioner's administrative discharge from the United States Air Force, a grand jury again indicted Petitioner and charged him with two counts of aggravated sexual abuse of a minor, in violation of 18 U.S.C. § 2241(c) and 7. Mr. Dash was appointed to represent Petitioner in that matter, which was assigned to United States District Judge Robert G. Doumar of this Court. After Judge Doumar denied several pretrial motions filed by Mr. Dash, including motions to dismiss the charges against Petitioner and to suppress incriminating statements, Petitioner entered a conditional plea to the offenses. On the date that Petitioner appeared for sentencing, Judge Doumar reversed his earlier denials of Petitioner's pretrial motions and dismissed without prejudice the charges against Petitioner.

On December 7, 2009, a grand jury once again indicted Petitioner on the same charges. Mr. Dash was again appointed to represent Petitioner, and Petitioner's case was assigned to this Court. Mr. Dash filed various pretrial motions to dismiss the charges against Petitioner and to suppress Petitioner's incriminating statements, which the Court denied. However, rather than pleading guilty, as he had done in the previous matter before Judge Doumar, Petitioner "ultimately decided not to plead guilty . . . and to proceed to trial." Pet'r's Reply Br. at 8, ECF No. 107.

3

On March 22, 2010, the day before trial was scheduled to commence, the Government filed a motion in limine to exclude the testimony of an expert witness, Dr. Ofshe, disclosed by Mr. Dash on March 19, 2010. The Government alleged that Mr. Dash's notice of the expert was untimely and, in any event, failed to comply with Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure. The Court granted the Government's motion and excluded the expert testimony. At the conclusion of Petitioner's four-day jury trial, the jury found Petitioner guilty on both counts.

Petitioner appealed his conviction to the United States Court of Appeals for the Fourth Circuit, challenging the Court's denial of his pretrial motions to dismiss and to suppress his incriminating statements. Petitioner also appealed the Court's granting of the Government's motion in limine to exclude his expert witness. On February 29, 2012, in a published opinion, the Fourth Circuit affirmed Petitioner's conviction, United States v. Holmes, 670 F.3d 586 (4th Cir. 2012). On October 9, 2012, the United States Supreme Court denied Petitioner's petition for a writ of certiorari. Holmes v. United States, 133 S. Ct. 426 (Oct. 9, 2012).

Petitioner filed his § 2255 motion and supporting memorandum on August 22, 2013. ECF Nos. 96, 97. On November 26, 2013, the Government filed a motion to compel Mr. Dash to

4

file an affidavit responding to Petitioner's ineffective assistance claims, ECF No. 100, which the Court granted on December 13, 2013, ECF No. 104. Mr. Dash filed his affidavit on January 10, 2014. ECF No. 105-1. The Government filed its response to Petitioner's motion on January 21, 2014. ECF No. 106. Petitioner filed his reply brief on February 6, 2014. ECF No. 107. Accordingly, this matter is ripe for review.

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. To obtain such relief, a petitioner bears the burden of proving that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner must prove the asserted grounds for relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing . . . the judge's recollection of the events at issue may enable him

summarily to dismiss a § 2255 motion." Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that collaterally attacks a sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. See In re Jones, 226 F.3d 328, 332-33 (4th Cir. 2000) ("'[Section] 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" (quoting Davis v. United States, 417 U.S. 333, 343 (1974))). The existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). On the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1981). Accordingly, a § 2255 collateral challenge "may not do service for an appeal." Id. at 165.

The "higher hurdle" that applies to claims advanced for the first time in a § 2255 action exists because, once a defendant's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." Id. at 164-65. Accordingly, the doctrine of procedural default

6

generally prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal unless a petitioner can show: (1) "cause" excusing the failure to directly appeal such alleged errors; and (2) "actual prejudice resulting from the errors of which he complains." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1992). "'The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim, or a denial of effective assistance of counsel.'" United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010) (quoting Mikalajunas, 186 F.3d at 493). As for prejudice, it is not enough for a petitioner to demonstrate "a possibility of prejudice," but rather, he must show that errors "worked to his actual and substantial disadvantage, infecting his entire [case] with error of constitutional dimensions." Frady, 456 U.S. at 170.

Alternatively, a petitioner may overcome the procedural default bar in limited circumstances by demonstrating that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack," such as where a petitioner can demonstrate actual innocence. Mikalajunas, 186 F.3d at 494. Actual innocence, however, "means factual innocence, not mere legal insufficiency" of a conviction. Bousley v. United States, 523 U.S. 614, 623-24 (1998); see

7

Mikalajunas, 186 F.3d at 494 (indicating that a petitioner must demonstrate "actual factual innocence"). A petitioner "asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 536-37 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "A federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Dretke v. Haley, 541 U.S. 386, 393-94 (2004).

A § 2255 petitioner need not, however, overcome the procedural default bar to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion. See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). Such rule exists because the Federal Rules Governing § 2255 Proceedings permit expansion of the record, which is generally unavailable on direct appeal and

often necessary to properly resolve an ineffective assistance claim. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010); see United States v. Allen, 491 F.3d 178, 191 (4th Cir. 2007) (indicating that ineffective assistance of counsel claims "are normally raised before the district court via 28 U.S.C. § 2255").

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court of the United States has interpreted the right to counsel as providing a defendant "'the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)) (emphasis added). To obtain relief based on an allegation of ineffective assistance a petitioner must establish both that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. Id. at 687-88. "[U]nsubstantiated and largely conclusory statements" are insufficient to carry a petitioner's burden as to the two prongs of the Strickland test. United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005).

When evaluating counsel's performance under the first prong of Strickland, courts "must be highly deferential." Strickland,

466 U.S. at 689; see Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986) (discussing the "highly demanding" Strickland standard). To establish constitutionally deficient performance, a petitioner must demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Such a showing must go beyond establishing that counsel's performance was below average, since "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978); see Strickland, 466 U.S. at 687. As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Courts should therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

In conducting a hindsight evaluation of counsel's performance, a court must recognize that there "are countless ways to provide effective assistance in any given case" and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id. If defense counsel has

made an adequate investigation into the facts and potential lines of defenses, "the strategic choices made as a result will seldom if ever be found wanting." Id. at 681 (internal quotation marks omitted). Accordingly, the difficulty in overcoming the general presumption that defense counsel provided effective assistance is even greater where counsel's actions required a strategic "assessment and balancing of perceived benefits against perceived risks" — such strategic decisions must be afforded "'enormous deference.'" United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (quoting United States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994)).

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Court applies a slightly modified prejudice standard when a petitioner alleges ineffective assistance associated with the entry of a guilty plea, requiring the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). If the

11

Petitioner fails to prove either of the two prongs of the Strickland test, the Court need not evaluate the other prong of the test.  United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004).

### III. DISCUSSION

Petitioner advances three grounds supporting his § 2255 motion.  Grounds One and Two allege that Petitioner's counsel was ineffective "during the pretrial, plea, trial, sentencing and direct appeal process."  Pet'r's § 2255 Mot. at 4, ECF No. 96.  Ground Three alleges that Petitioner's "conviction and sentence are violative of the First, Second, Fourth, Sixth, and Eighth Amendments to the Constitution."  Id. at 5.

#### A. Grounds One and Two: Ineffective Assistance of Counsel

Because both Grounds One and Two of Petitioner's § 2255 motion allege ineffective assistance and contain many overlapping claims, the Court addresses Grounds One and Two together.  Petitioner alleges that his counsel was ineffective "during the pretrial, plea, trial, sentencing and direct appeal process."  Id. at 4.  The Court will address Petitioner's claims in that order.

##### 1. Pretrial

Petitioner alleges that, before trial, his defense counsel was ineffective because he (1) failed to "conduct[] an independent investigation of the facts, circumstances, pleadings

12

and laws" surrounding Petitioner's case, id. ¶ 23, and (2) "labored under an actual conflict of interest which adversely affected [his] performance" throughout the case, id. ¶ 51.

### a. Failure to Investigate

It is well-settled that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. However, "an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced." Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) (citing Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990)); see also Goins v. Warden, 576 F. App'x 167, 173 (4th Cir. 2014) (unpublished) (citing Beaver, 93 F.3d at 1195). Although Petitioner broadly claims that his counsel failed to adequately investigate his case, he points to no specific "facts, circumstances, pleadings and laws" that his counsel failed to uncover. Pet'r's § 2255 Mot. ¶ 23, ECF No. 96. Therefore, to the extent Petitioner has failed to proffer what "facts, circumstances, pleadings, and laws" an adequate investigation by counsel would have discovered, Petitioner's failure-to-investigate claim is conclusory. Thus, because Petitioner asserts only "unsubstantiated and largely conclusory statements" with respect to his failure-to-investigate claim, he "fall[s]

13

far short of carrying [his] burden of persuasion as to the two elements of the test outlined in Strickland." Turcotte, 405 F.3d at 537; see also United States v. Hawkins, 531 F. App'x 342, 345 (4th Cir. 2013) (observing that "'[c]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel'" (quoting United States v. Demik, 489 F.3d 644, 646 (5th Cir. 2007))). Accordingly, the Court **DENIES** Petitioner's failure-to-investigate claim.

### b. Conflict of Interest

A defendant advancing a conflict-of-interest claim must show "that (1) petitioner's lawyer operated under a 'conflict of interest' and (2) such conflict 'adversely affected his lawyer's performance.'" United States v. Nicholson, 611 F.3d 191, 206 (4th Cir. 2010) (quoting Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)). Thus, Petitioner must show "'some real conflict of interest . . . resulting from [the] representation . . . before it can be said that [he] has been denied the effective assistance of counsel.'" United States v. Atkinson, 565 F.2d 1283, 1284 (4th Cir. 1977) (quoting United States v. Lovano, 420 F.2d 769, 772-73 (2d Cir. 1970)); see also Sullivan, 446 U.S. at 350 (holding that, "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance"). Here, Petitioner asserts no facts

14

whatsoever in support of his claim that his "counsel labored under an actual conflict of interest which adversely affected [his] performance" throughout the case. Pet'r's § 2255 Mot. ¶ 51, ECF No. 96. Specifically, Petitioner fails to identify either "an actual conflict of interest" or "an adverse effect [of the alleged conflict] on counsel's performance." United States v. Tatum, 943 F.2d 370, 375-76 (4th Cir. 1991) (citing Sullivan, 446 U.S. at 348). Because Petitioner fails to identify any facts supporting his conclusory allegation that his "counsel labored under an actual conflict of interest which adversely affected [his] performance" throughout the case, Pet'r's § 2255 Mot. ¶ 51, ECF No. 96, he "fall[s] far short of carrying [his] burden of persuasion as to the two elements of the test outlined in Strickland." Turcotte, 405 F.3d at 537. Accordingly, the Court **DENIES** Petitioner's conflict-of-interest claim.

## 2. Plea

Petitioner alleges that his counsel (1) failed to "seriously investigate, explore, or attempt to negotiate a favorable plea agreement . . . or keep [Petitioner] advised of such negotiations and opportunities," Pet'r's § 2255 Mot. ¶ 24, ECF No. 96, and (2) failed to "fully advise" Petitioner regarding whether he should plead "not guilty and proceed to trial," enter a conditional guilty plea, or "plead guilty [or]

15

nolo contendere," with or without a plea agreement, id. ¶¶ 25-33.

### a. Plea Negotiations

The United States Supreme Court has held that "defendants are 'entitled to the effective assistance of competent counsel'" during plea negotiations. Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (quoting McMann, 397 U.S. at 771). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012). However, "a defendant has no right to be offered a plea." Id. at 1403; see also Weatherford v. Bursey, 429 U.S. 545, 561 (1977) (observing that "there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial"). Nevertheless, the Fourth Circuit has indicated that "[w]hile there is no constitutional right to a plea agreement, and the decision to initiate plea negotiations is ordinarily a strategic decision within the purview of defense counsel, counsel is still required to be a 'reasonably effective advocate' regarding the decision to seek a plea bargain." United States v. Lopez, 570 F. App'x 291, 292 (4th Cir. 2014) (unpublished) (internal quotation marks and citations omitted) (quoting Brown v. Doe, 2 F.3d 1236, 1246 (2d Cir. 1993)).

Here, Petitioner claims that his counsel failed to "seriously investigate, explore, or attempt to negotiate a favorable plea agreement . . . or keep [Petitioner] advised of such negotiations and opportunities." Pet'r's § 2255 Mot. ¶ 24, ECF No. 96. However, "the decision to initiate plea negotiations is ordinarily a strategic decision within the purview of defense counsel," Lopez, 570 F. App'x at 292, and, under the first prong of Strickland, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," 466 U.S. at 689. In this case, though Petitioner initially contended that his counsel had failed to attempt to negotiate a plea agreement with the Government, see Pet'r's § 2255 Mot. ¶ 23, ECF No. 96, he has not controverted the Government's contention in its response that the Government offered Petitioner a plea agreement that he rejected, see Gov't's Resp. at 12, ECF No. 106. Indeed, in his reply, Petitioner indicates that he, in fact, received a plea offer because Petitioner refers to the fact that he "did not want to plead 'guilty' to the first available offer." Pet'r's Reply Br. at 8, ECF No. 107. Such statement referencing an "available offer" belies Petitioner's earlier contention that his counsel failed to negotiate a possible plea agreement. Accordingly, it appears that defense counsel, in fact, negotiated at least one possible plea agreement with the

Government and communicated such agreement to Defendant because Defendant has indicated that he rejected the "first available offer."

The Court finds that Petitioner has satisfied neither the deficiency nor the prejudice prongs of Strickland. Under the first prong of Strickland, the Court concludes that Petitioner has not alleged sufficient facts to rebut the presumption that counsel's strategic decisions with respect to plea negotiations fall within the "wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. The Sixth Amendment does not necessarily require counsel to initiate plea bargaining negotiations in every case because such decision is a "strategic decision" within the purview of defense counsel. Lopez, 570 F. App'x at 292; see also Hawkman v. Parratt, 661 F.2d 1161, 1171 (8th Cir. 1981); cf. Brown, 2 F.3d at 1246. Here, the record suggests that counsel participated in plea negotiations with the Government, at least to some extent, because a plea offer was "available" to Petitioner. See Pet'r's Reply Br. at 8, ECF No. 107. Moreover, Petitioner has failed to identify any specific plea offered by the Government of which Petitioner's counsel failed to inform him, see Frye, 132 S. Ct. at 1408 (holding that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."), and has not

alleged that counsel failed to negotiate a potential plea agreement with the Government after Petitioner expressly directed him to do so, see Lopez, 570 F. App'x at 292.  In light of those facts, Petitioner's conclusory allegations that counsel failed to "investigate, explore, or attempt to negotiate a favorable plea agreement," Pet'r's § 2255 Mot. ¶ 24, ECF No. 96, fall well short of rebutting the presumption that counsel's performance was reasonable.

Likewise, Petitioner has failed to demonstrate prejudice from any deficiency in plea negotiations on the part of defense counsel.  The United States Supreme Court has established that a defendant has "no right to be offered a plea" by the Government. Frye, 132 S. Ct. at 1403.  Yet, in this case, such an offer was "available," but Defendant rejected it.  See Pet'r's Reply Br. at 8, ECF No. 107.  Accordingly, to the extent that Petitioner actually received a plea offer but chose to reject it—despite the fact that he had no constitutional entitlement to such an offer—Petitioner has not established any prejudice from counsel's alleged failure to "investigate, explore, or attempt to negotiate a favorable plea agreement," id.  Therefore, the Court will **DENY** Petitioner's claim based on counsel's alleged failure to negotiate a plea agreement on Petitioner's behalf because Petitioner has shown neither deficient performance nor prejudice, as required under Strickland.

### b. Plea Advice

In the context of ineffective assistance claims arising from the plea process, a defendant "must show that counsel's representation fell below an objective standard of reasonableness," Strickland, 466 U.S. at 687-88, and that "counsel's constitutionally ineffective performance affected the outcome of the plea process," Lockhart, 474 U.S. at 59. To demonstrate prejudice where a defendant went to trial, rather than accepting a plea offer, the "defendant must show that but for the ineffective advice of counsel there is a reasonable probability that [a] plea offer would have been presented to the court," "the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, 132 S. Ct. at 1385.

Here, Petitioner asserts that his counsel failed to adequately advise him of all of his plea options. Petitioner contends that counsel provided constitutionally deficient assistance by failing to advise him of his ability to enter a nolo contendere plea, a conditional guilty plea, or a "straight up" guilty or nolo contendere plea, without the benefit of a plea agreement. However, Petitioner fails under the prejudice prong of Strickland because he has not demonstrated that "the

outcome of the plea process would have been different with competent advice." Lafler, 132 S. Ct. at 1385.

First, even assuming that counsel did not advise Petitioner regarding a nolo contendere plea, there is absolutely no evidence in the record to suggest that the Government would have offered or agreed to such a plea. See, e.g., Minor v. United States, No. 1:09cr210, 2012 WL 488262, at *11-12 (E.D. Va. Feb. 13, 2012) (observing that "the United States' policy is not to offer or to consent to nolo contendere pleas, absent highly unusual circumstances"), certificate of appealability denied, 486 F. App'x 387 (4th Cir. 2012); see also Gov't's Br. in Opp'n at 14, ECF No. 106 (asserting "that the United States would have objected to a nolo contendere plea, as it is expressly disapproved by the Department of Justice without approval of the Department of Justice," and observing that courts generally "accept a plea of nolo contendere only in certain types of cases involving nonviolent crimes where civil implications may arise from a guilty plea" (citations omitted)). Moreover, given the nature of the crimes involved in this case, it is unlikely that the Court would have accepted such a plea, as required under Federal Rule of Criminal Procedure 11. Accordingly, even assuming, arguendo, that counsel's failure to advise Petitioner of his ability to enter a nolo contendere plea fell below the standard of objectively reasonable performance, Petitioner's

claim fails because he has not demonstrated a reasonable probability that the Government or the Court would have accepted such a plea and, therefore, has not satisfied Strickland's prejudice element.

Second, regarding Petitioner's assertion that his counsel failed to advise him "of the potential opportunity to plead guilty pursuant to a 'conditional' plea agreement" that would preserve his "right to appeal the denial of his motion to suppress statements . . . and to appeal the district court's order excluding testimony of his expert witness," Pet'r's § 2255 Mot. ¶ 30, ECF No. 96 (emphasis in original), the record clearly indicates that Petitioner was aware of such "potential opportunity," id., because Petitioner had entered into a similar conditional plea agreement just a few months earlier in his previous case before Judge Doumar. See Plea Agreement ¶ 5, Case No. 4:08-cr-134, ECF No. 27, (agreeing, "pursuant to Rule 11(c)(1)(C)," to "a sentence range of no less than 108 months in prison and no more than 135 months in prison"); id. ¶ 6 ("preserv[ing] the limited right of appeal concerning the adverse rulings on venue and jurisdiction of the District Court on a pre-trial motion"); see also Plea Hr'g Tr. at 22-23, Case No. 4:08-cr-134, ECF No. 52 (confirmation by Petitioner that his plea was "a conditional plea of guilty, preserving [his] rights to appeal the place of the trial of this action"). Although

22

Petitioner now contends that he was not properly advised in this case, the temporal proximity between the case before Judge Doumar—a case in which Defendant admits that he was "fully and constitutionally advised," Pet'r's § 2255 Mot. ¶ 42A—and Defendant's trial in this case convinces the Court that Defendant was fully aware of the ability to enter a conditional plea. Thus, the proceedings in the previous case before Judge Doumar and Petitioner's conditional guilty plea in such case affirmatively demonstrate that any alleged deficiency in counsel's advice to Petitioner about the ability to enter a conditional guilty plea did not prejudice Petitioner because he was fully aware of his ability to enter such a plea, as he did in the case before Judge Doumar. Given that Petitioner chose to proceed to trial, despite being aware of the potential to enter a conditional plea as he had in the case before Judge Doumar, Petitioner has failed to demonstrate a reasonable probability that Petitioner would have entered a conditional guilty plea, rather than proceed to trial, had counsel advised him of the availability of such a plea.

Third, regarding Petitioner's allegation that counsel's performance was constitutionally deficient because counsel allegedly failed to advise Petitioner that he could have entered a "straight up" plea of guilty or nolo contendere without the benefit of a plea agreement, Petitioner's claim fails because he

23

has not demonstrated prejudice, even assuming both the truth of his allegations and that such allegations establish constitutionally unreasonable performance by counsel. "'[A]fter the fact testimony concerning [petitioner's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer,'" Mann v. United States, ___ F. Supp. 3d ___, No. 1:11-cv-341, 2014 WL 6900077, at *7 (E.D. Va. Dec. 4, 2014) (Ellis, J.) (quoting Berry v. United States, 884 F. Supp. 2d 453, 463 (E.D. Va. 2012)), nor is such testimony sufficient with respect to whether Petitioner would have entered a straight up plea to an indictment, see id. at *8-9.

Petitioner's allegations with respect to a "straight up" plea of guilty or nolo contendere are insufficient to demonstrate prejudice. As an initial matter, Petitioner has not even alleged that there is a reasonable probability that he would have pleaded guilty if he was aware of the ability to enter a "straight up" guilty plea without the benefit of a plea agreement. Even if Petitioner had presented such allegations, they would be insufficient, without more, to establish prejudice under Strickland. See id. at *8-9.

Here, Petitioner alleges, in a conclusory fashion, without reference to any record evidence, that "had [Petitioner] pleaded guilty or nolo contendere instead of proceeding to trial, there

is a reasonable probability he would have received a sentence of
. . . 108-135 months instead of 262 months." Pet'r's § 2255
Mot. ¶¶ 39, 41, ECF No. 96. Petitioner appears to allege that,
if he entered a "straight up" guilty or nolo contendere plea,
such lower Guideline range would result from a lower offense
level because he would have received a three-level credit for
acceptance of responsibility and would not have received a two-
level enhancement for obstruction of justice, as he would not
have testified.[1] However, the evidence in the record contradicts
Petitioner's implicit contention that he would have accepted
responsibility for his actions and pleaded guilty if counsel had
informed him of the ability to enter a "straight up" guilty or
nolo contendere plea. As the Court noted while sentencing
Petitioner, Petitioner did not accept responsibility for his
actions in any way, instead, choosing to deny any wrongdoing and
force his victim, T.B., to re-live Petitioner's abuse through
testifying at his trial. Sentencing Tr. at 53-54, ECF No. 82.
Petitioner's refusal to accept responsibility for his actions—as
the Court observed firsthand throughout Petitioner's trial and
sentencing—was significant for the Court at sentencing, id., and

---

[1] The Court notes that Petitioner appears to have erred in
calculating the counterfactual Guideline range of 108-135 months
imprisonment because a five-level reduction in Petitioner's offense
level, from level 37 to level 32, based on the application of the
U.S.S.G. § 3E1.1 credit for acceptance of responsibility and non-
application of the U.S.S.G. § 3C1.1 enhancement, would have resulted
in a Guideline range of 121-151 months.

belies his apparent contention now that he would have accepted responsibility for his actions had counsel informed him of the ability to enter a "straight up" plea of guilty or nolo contendere. Similarly, the record conclusively establishes, based on his own testimony, that Petitioner was aware of the possibility of an enhancement based on his decision to testify, should the jury convict him, but chose to testify anyway. Trial Tr. at 416, ECF No. 80. Accordingly, the Court finds that Defendant has not demonstrated prejudice from any alleged error on counsel's part in failing to inform Petitioner that he could enter a "straight up" plea because the record contradicts his conclusory assertion that he would have entered a "straight up" guilty plea, refused to testify, and accepted responsibility for his actions.[2]

In short, with respect to Petitioner's claims regarding ineffective assistance based on counsel's alleged failure to inform Petitioner about his options with respect to a nolo contendere, conditional guilty, or "straight up" guilty or nolo contendere plea, Petitioner has failed to point to specific

---

[2] In addition, Petitioner's reply brief indicates that a plea agreement was "available" to Petitioner, but Petitioner "decided not to plead guilty or nolo contendere and to proceed to trial." Pet'r's Reply Br. at 8. Petitioner's decision to reject the "first available offer" further belies his apparent contention that he would have entered a "straight up" plea of guilty or nolo contendere had counsel advised him of such avenues. The fact that Petitioner was unwilling to enter a guilty plea with an available plea agreement offer indicates that it is highly unlikely that he would have entered such a plea without any plea agreement.

facts demonstrating that, "but for the ineffective advice of counsel there is a reasonable probability that [such a] plea offer would have been presented to the court," "the court would have accepted its terms, and that the conviction or sentence . . . would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, 132 S. Ct. at 1385. Thus, even assuming, arguendo, that counsel's conduct fell below the objective standard of reasonableness, Petitioner has not demonstrated prejudice under Strickland and, therefore, the Court DENIES his claims with respect to plea advice.

### 3. Trial

Petitioner alleges that his defense counsel was ineffective because he "failed to timely and properly file notice of intent to call a defense expert witness, Dr. Ofshe, to testify how and why individuals falsely confess to crimes," which resulted in exclusion of the expert witness's testimony. Pet'r's § 2255 Mot. ¶ 46, ECF No. 96. Petitioner asserts that "the loss of Dr. Ofshe's testimony undermines confidence in the verdict" because such testimony "was [Petitioner's] only realistic defense." Id. Petitioner further asserts that defense counsel "unprofessionally failed to advise [him] . . . [regarding] his decision whether to testify at trial," "failed to timely request appropriate jury instructions and to timely object to insufficient instructions," and "failed to timely object to

27

improper argument by the prosecution and/or ask for curative instructions for the improper argument." Id. ¶¶ 47-48.

### a. Expert Witness

Assuming, arguendo, that Petitioner's counsel's "fail[ure] to timely and properly file notice of intent to call a defense expert witness" qualifies as deficient performance under the first prong of Strickland, Petitioner nonetheless fails to satisfy the second Strickland prong because he fails to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Petitioner alleges that the "defense expert witness, Dr. Ofshe," would have testified "how and why individuals falsely confess to crimes," and that Dr. Ofshe's testimony "was [Petitioner's] only realistic defense." Pet'r's § 2255 Mot. at ¶ 46, ECF No. 96. However, as the Court noted at the hearing on the Government's motion to exclude Dr. Ofshe's testimony, Dr. Ofshe was not expected to "offer[] an opinion about . . . whether or not . . . the statements made by Darrell Holmes in this case were in fact false." Trial Tr. at 20-21, ECF No. 87. "Rather," the Court observed, "Dr. Ofshe's testimony is offered to educate the trier [of fact] about the scientific research on false confessions, the fact that they occur, and some of the reasons why." Id. at 21. As "somewhat of an ancillary point," the Court noted that

some of Dr. Ofshe's testimony was "obvious to a juror," suggesting that at least some of it might have been excluded because it is "within the realm of knowledge and common experience of any human being to know that there may be times and circumstances where people say things that aren't true, and that context is important to understanding the reasons behind people sometimes saying things that aren't true." Id. at 25; cf. Fed. R. Evid. 702(a) (providing that expert testimony is admissible if his "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"). Indeed, although the Fourth Circuit has suggested, in an unpublished decision, that it is error for a court to summarily refuse to allow testimony by an alleged expert on false confessions, see United States v. Belyea, 159 F. App'x 525, 530-31 (4th Cir. 2005) (unpublished) (per curiam), other courts have upheld trial court decisions to exclude expert testimony on the general circumstances relating to false confessions, see, e.g., United States v. Benally, 541 F.3d 990, 995-96 (10th Cir. 2008); United States v. Namah, 332 F.3d 475, 478 (7th Cir. 2003). Thus, it is not at all clear that "[b]ut for counsel's unprofessional errors, the witness'[s] testimony would have been allowed," contrary to Petitioner's conclusory allegation. Pet'r's § 2255 Mot. ¶ 46, ECF No.96.

Furthermore, even without Dr. Ofshe's testimony, Petitioner had a full opportunity to place before the jury the veracity of his confession. Petitioner took the stand and testified on his own behalf at trial that he had falsely confessed. He described in great detail the circumstances leading up to, and surrounding, his confession and written statement. See Trial Tr. at 446-465, ECF No. 80. Petitioner testified that he had only admitted to forcing his stepdaughter to perform oral sex on him because "[he] was scared and [he] just wanted to get up out of there." Id. at 465-66. When asked by his counsel, "as we sit here today, you've heard the testimony of everybody here" – "did you have your stepdaughter, T.B., perform oral sex on you on two occasions in Japan?" Petitioner testified, "No, I did not." Id. at 466. Thus, even without Dr. Ofshe's testimony regarding "how and why individuals falsely confess to crimes," Petitioner presented the jury with his "only realistic defense," namely, that his confession to molesting his stepdaughter was not true. Pet'r's § 2255 Mot. ¶ 46, ECF No. 96.

On the other hand, the Government presented significant evidence to the jury, including the testimony of Defendant's victim, T.B., and her mother, J.H., that Defendant had, in fact, committed the offenses charged against him in the Indictment, rather than simply falsely confessed thereto. Notwithstanding Petitioner's claim to the contrary, the jury rejected such

contention and credited the testimony of the other witnesses in
this case over Petitioner's testimony.

In light of the uncertainty regarding whether the Court
would have allowed Dr. Ofshe to testify, Petitioner's thorough
presentation to the jury of the issue of the truthfulness of his
confession even without such testimony, and the significant
evidence that the Government presented to demonstrate that
Petitioner, in fact, committed the offenses charged against him,
the Court finds that Petitioner has failed to show a reasonable
probability that the outcome of the proceeding in question would
have been different if counsel had timely filed an adequate Rule
16 disclosure with respect to Dr. Ofshe.   "[T]he standard of
prejudice set out in Strickland requires more than a mere
possibility that the allegedly deficient performance may have
prejudiced the defendant in any way."    Poyner v. Murray, 964
F.2d 1404, 1420-21 (4th Cir. 1992).   "Quite to the contrary, the
constitutional guarantee of effective assistance of counsel is
violated only when an attorney's unprofessional errors were of
such magnitude as to create a reasonable probability that the
outcome of the proceeding in question would have been
different."   Id.   Although Dr. Ofshe's testimony may have added
some credibility to Petitioner's claim that he had falsely
confessed to molesting his stepdaughter, Petitioner fails to
demonstrate how the exclusion of Dr. Ofshe's testimony resulted

in an error "of such magnitude as to create a reasonable probability that the outcome of the proceeding in question would have been different," id. Accordingly, because Petitioner fails to satisfy the second prong of Strickland, the Court **DENIES** Petitioner's claim with respect to counsel's Rule 16 disclosure.

### b. Petitioner's Decision to Testify

Petitioner alleges that his "counsel took the extraordinary step of placing [Petitioner] on the witness stand without fully advising him as to the potential adverse consequences to his sentence if his testimony wasn't believed." Pet'r's § 2255 Mot. ¶ 47, ECF No. 96. However, the United States Court of Appeals for the Fourth Circuit, recognizing the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," has long held that "the advice provided by a criminal defense lawyer on whether his client should testify is 'a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance.'" Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002) (quoting Hutchins v. Garrison, 724 F.2d 1425, 1436 (4th Cir. 1938)). In any event, Petitioner's "contention is without legal merit" because the record clearly indicates that Petitioner was aware of the consequences of testifying at trial.

A careful review of the trial transcript reveals that, before Petitioner testified on his own behalf, he took the stand

outside the presence of the jury and answered numerous questions, under oath, regarding his decision to testify. Petitioner's defense counsel conducted a lengthy waiver colloquy, where Petitioner confirmed that he and his counsel had "talked about [Petitioner's] right to testify and not to testify," and acknowledged "that it's truly [Petitioner's] decision and [Petitioner's] decision alone." Trial Tr. at 413-14, ECF No. 80. Petitioner agreed that his counsel had not "forced [him] in any way or threatened [him] in any way in order to have [him] testify," and, "at least at this point . . . [Petitioner] want[ed] to testify." Id. at 414. Petitioner informed the Court that he "had sufficient time to talk with [his counsel] about the pluses and minuses of whether [he] should or should not testify," and that he "ha[d] a good understanding of the risks and the benefits . . . of testifying," including "the potential for perjury prosecution." Id. at 415. Petitioner also acknowledged that, if he were to be "convicted despite [his] testimony, that . . . could result in an increased sentence," including "a level increase for perjury or providing false information at trial if the jury were to convict [him]." Id. at 416. "[D]espite that," Defendant confirmed that he "still want[ed] to testify." Id. Because "[s]olemn declarations in open court carry a strong presumption of verity," any "subsequent presentation of conclusory

33

allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge, 431 U.S. at 74. Accordingly, because Petitioner's assertion that his counsel failed to advise him of the consequences of testifying is completely belied by his own sworn statements made in open court, the Court **DENIES** such claim.

### c. Jury Instructions

Petitioner alleges that his counsel was ineffective because he "failed to timely request appropriate jury instructions" and failed "to timely object to insufficient instructions." Pet'r's § 2255 Mot. ¶ 48, ECF No. 96. However, Petitioner fails to point to any jury instructions that should have been, but were not, given to the jury, or any allegedly insufficient or improper jury instructions to which Petitioner alleges his defense counsel should have objected or responded with proper instructions. See, e.g., Pruett v. Thompson, 996 F.2d 1560, 1577 (4th Cir. 1993) (observing that "it is not ineffective assistance of counsel to fail to offer additional or different instructions if the ones given by the trial court are proper"); Peterson v. Murray, 904 F.2d 882, 888 (4th Cir. 1990) ("Because the instruction was constitutional, [defendant] was not prejudiced by his counsel's failure to object to it."). Accordingly, because Petitioner "fall[s] far short of carrying

34

[his] burden of persuasion as to the two elements of the test outlined in <u>Strickland</u>," <u>Turcotte</u>, 405 F.3d at 537, Petitioner's claim is **DENIED**.

### d. Improper Argument

Petitioner asserts that his counsel was ineffective because he "failed to timely object to improper argument by the prosecution [during final argument] and/or to timely ask for curative instructions for the improper argument." Pet'r's § 2255 Mot. ¶ 48, ECF No. 96. However, Petitioner fails to point to any allegedly improper argument by the prosecutor, to which he alleges his defense counsel should have objected. Accordingly, because Petitioner "fall[s] far short of carrying [his] burden of persuasion as to the two elements of the test outlined in <u>Strickland</u>," <u>Turcotte</u>, 405 F.3d at 537, Petitioner's claim is **DENIED**.

### 4. Sentencing

Petitioner alleges that his counsel was ineffective because he "failed to investigate or present available evidence and legal authority material to [his] sentencing" and "failed to object to unlawful, false and unreliable evidence used to determine [his] guideline sentencing range and ultimate sentence." Pet'r's § 2255 Mot. ¶ 49, ECF No. 96. However, Petitioner fails to identify any evidence or authority that his defense counsel failed to cover or any allegedly unlawful, false

35

and unreliable evidence that would have favorably affected Petitioner's sentencing range or ultimate sentence. Because Petitioner "fall[s] far short of carrying [his] burden of persuasion as to the two elements of the test outlined in Strickland," Turcotte, 405 F.3d at 537, the Court **DENIES** Petitioner's claim. See United States v. Frye, No. 3:07-cr-247, 2013 U.S. Dist. LEXIS 99968, at *15 n.5 (E.D. Va. July 17, 2013) (declining to consider defendant's "general[] complain[t] . . . that counsel failed 'to object to false and unreliable evidence' at sentencing" because he "fail[ed] to identify the allegedly false and unreliable evidence").

### 5. Direct Appeal

Defendants are entitled to effective assistance of counsel on their "first appeal as of right." Evitts v. Lucey, 469 U.S. 387, 396 (1985). However, "to bring a Strickland claim based on counsel's failure to raise a particular claim," a defendant must show "that a nonfrivolous issue was clearly stronger than issues that counsel did present." Smith v. Robbins, 528 U.S. 259, 288 (2000). Petitioner asserts that his counsel "failed to investigate or present the strongest issues available to [him] for his direct appeal and failed to preserve viable issues for collateral review." Pet'r's § 2255 Mot. ¶ 50, ECF No. 96. However, Petitioner fails to identify any issues that his counsel failed to present on direct appeal, much less any issues

36

that were "clearly stronger than [the] issues that counsel did present." Robbins, 528 U.S. at 288. Accordingly, because Petitioner fails to show either deficient performance by his counsel or any resulting prejudice, Petitioner's claim is **DENIED**.

### 6. Cumulative Impact

Petitioner alleges that he was prejudiced by the "cumulative impact of multiple deficiencies or errors by [his] counsel during the pretrial, plea, trial, sentencing and direct appeal process." Pet'r's Br. Supp. § 2255 Mot. at 15, ECF No. 97. However, the Fourth Circuit has held that "ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively." Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1988). In any event, because Petitioner has failed to establish a single deficiency, his "cumulative impact" argument necessarily fails and is therefore denied. Accordingly, because none of Petitioner's claims within Grounds One and Two of his § 2255 motion have any merit, the Court **DENIES** Grounds One and Two of Petitioner's § 2255 motion.

### B. Ground Three: Conviction and Sentence

Petitioner asserts that his "conviction and sentence are violative of the First, Second, Fourth, Sixth, and Eighth Amendments to the Constitution." Pet'r's § 2255 Mot. at 5, ECF

No. 96. Specifically, Petitioner asserts that the following rights were violated: "his right to freedom of speech and to petition, his right to be free of unreasonable search and seizure, his right to due process of law, his rights to counsel, to jury trial, to confrontation of witnesses, to present a defense, and to compulsory process, and his right to be free of cruel and unusual punishment under the Constitution." Id. Petitioner does not offer any additional facts or arguments in support of his constitutional claims.

As discussed above, a petitioner is generally precluded from asserting for the first time a § 2255 claim that he could have raised on direct appeal, unless he can show "cause" excusing his failure to directly appeal the errors and "actual prejudice resulting from the errors of which he complains," or unless he can prove a "miscarriage of justice [that] would result from the refusal of the court to entertain the collateral attack." Mikalajunas, 186 F.3d at 492-94. Petitioner acknowledges that he "did not raise this issue in [his] direct appeal" and cites "[i]nsufficient record and/or ineffective assistance of counsel" as the reason for not doing so. Id. However, because Petitioner fails to state any facts supporting his argument, as he is required to do under the Federal Rules, see R. Governing § 2255 Proceedings in U.S. Dist. Cts. 2(b)(2), Petitioner fails to establish either "actual prejudice" or a

"miscarriage of justice resulting "from the refusal of the court to entertain the collateral attack." Mikalajunas, 186 F.3d at 492-94. Thus, because Petitioner failed to raise this issue on direct appeal, and fails to advance a valid justification excusing his procedural default, Ground Three of Petitioner's § 2255 motion is **DISMISSED.** In any event, a careful review of the record reveals no such Constitutional violations as alleged by Petitioner. Indeed, it appears that Petitioner received "due process of law," as he was appointed "counsel" during his "jury trial," where his appointed counsel "present[ed] a defense," including various witnesses compelled by Petitioner to appear, and Petitioner had the opportunity to "confront[the] witnesses" against him. Pet'r's § 2255 Mot. at 5, ECF No. 96. Furthermore, Petitioner's sentence of 262 months is well within the statutory limit of life imprisonment and Petitioner asserts no "extraordinary circumstances" warranting review of his sentence. See United States v. Whitehead, 849 F.2d 849, 860 (4th Cir. 1988). The Court cannot determine any basis for Petitioner's claim that he was deprived of either "his right to freedom of speech and to petition" or "his right to be free of unreasonable search and seizure." Id. Accordingly, in the alternative, the Court **DENIES** Ground Three of Petitioner's § 2255 motion on the merits.

## C. Remaining Motions

Within Petitioner's § 2255 motion, Petitioner requests discovery, an evidentiary hearing, and appointment of counsel. Pet'r's § 2255 Mot. at 20-22, ECF No. 96.   First, Petitioner requests "an evidentiary hearing where he can prove the allegations herein by: (A) his own testimony; (B) the testimony of Attorneys Larry Mark Dash, Andrew Michael Sacks, and William Francis O'Mara, Jr.; (C) the testimony of AUSA Lisa R. Mckeel; (D) additional evidence; and (E) legal argument to be presented at the hearing."   Id. at 20.   Second, Petitioner's discovery motion seeks an order by the Court "that the witnesses set forth [above] allow themselves to be deposed."   Id.   Third, Petitioner requests "that counsel be appointed."   Id. at 22.   The Court finds that discovery, an evidentiary hearing, and appointment of counsel are unnecessary because the record conclusively demonstrates that Petitioner is not entitled to the relief sought in his § 2255 motion.   See R. Governing § 2255 Proceedings in U.S. Dist. Cts. 6, 8(a).   Accordingly, the Court **DISMISSES AS MOOT** Petitioner's motions for discovery, evidentiary hearing, and appointment of counsel.

## IV. CONCLUSION

For the reasons discussed above, Ground Three of Petitioner's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 96, is **DISMISSED** as procedurally defaulted.

Moreover, such motion, ECF No. 96, is **DENIED IN ITS ENTIRETY** because all of Petitioner's claims, including his non-defaulted ineffective assistance claims, fail on the merits.  The Court **DISMISSES AS MOOT** Petitioner's requests for discovery, an evidentiary hearing, and appointment of counsel.

Finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability as to Petitioner's § 2255 motion is **DENIED.**  R. Governing § 2255 Proceedings in U.S. Dist. Cts. 11(a); 28 U.S.C. § 2253(c)(2); see Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003).

Petitioner is **ADVISED** that, because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a).  If Petitioner intends to seek a certificate of appealability from the Court of Appeals, he must forward a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510, within sixty (60) days from the date of this Order.

The Clerk is **REQUESTED** to forward a copy of this Opinion and Order to Petitioner, Petitioner's former counsel, Larry Dash, and the United States Attorney's Office in Newport News, Virginia.

**IT IS SO ORDERED.**

_____/s/ MSD_____

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
January 28 , 2015

42